UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM LIFE INSURANCE
COMPANY,

       Plaintiff,

v.

Case No. 11-12787
Hon. Gerald E. Rosen

P.M.C., a minor child by DINO CANDELA
and VICKIE CANDELA, as Next Friends;
BANCO POPULAR NORTH AMERICA;
UNITED STATES SMALL BUSINESS
ADMINISTRATION; and INFORMATION
SYSTEMS AUDIT AND CONTROL
ASSOCIATION, INC.,

       Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT BANCO
POPULAR NORTH AMERICA'S MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     August 5, 2013

PRESENT: Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff State Farm Life Insurance Company commenced this interpleader action in this Court on June 28, 2011, requesting that the Court determine which of the several Defendants is entitled to $150,000 in life insurance benefits payable upon the death of decedent Michael Candela. Defendant Information Systems Audit and Control Association, Inc. was voluntarily dismissed from this suit on April 24, 2012, leaving

Defendants P.M.C. (a minor child), Banco Popular North America ("Banco Popular"), and the United States Small Business Administration as the remaining parties litigating their respective claims to the life insurance proceeds. On July 19, 2012, Plaintiff State Farm deposited the benefits at issue, plus interest and premium refunds, into the registry of the Court, and was then dismissed from the case.

By motion filed on June 25, 2012, Defendant Banco Popular now seeks an award of summary judgment in its favor as to its entitlement to the life insurance benefits paid into the Court by Plaintiff State Farm. In support of this motion, Banco Popular contends that it obtained (and still holds) an interest in these benefits by virtue of Michael Candela's assignment of a State Farm life insurance policy to this Defendant lender in connection with loans made by Banco Popular to Mr. Candela's business. Defendant P.M.C. responded to this motion on July 12, 2012, arguing that because Banco Popular participated in Mr. Candela's bankruptcy proceedings and received payment in the course of these proceedings arising from the debts owed to it by Mr. Candela, these debts have been discharged and Banco Popular is not entitled to any further payment of any portion of the life insurance proceeds.[1]

Banco Popular's motion has been fully briefed by the parties. Having reviewed the parties' briefs in support of and opposition to this motion, the accompanying exhibits, and the record as a whole, the Court finds that the relevant facts, allegations, and legal

---

[1] For its part, the Defendant United States Small Business Administration has indicated in a July 11, 2012 statement that it has no objections to the relief sought in Defendant Banco Popular's motion.

arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Banco Popular's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 2007, Plaintiff State Farm Life Insurance Company issued a life insurance policy in the amount of $150,000 to decedent Michael Candela. In his application for this life insurance, dated November 21, 2007 and amended on January 8, 2008, Mr. Candela listed Defendants Banco Popular North America, the United States Small Business Administration, and Information Systems Audit and Control Association, Inc. as the primary beneficiaries, with his niece, Defendant P.M.C,[2] named as successor beneficiary. A policy endorsement, however, identifies P.M.C. as the primary beneficiary, and State Farm has acknowledged in the course of discovery that Mr. Candela's niece was the sole beneficiary named in the policy at the time of Mr. Candela's death.

Around the same time this life insurance policy was issued to Mr. Candela, his business, Big Ugly, Inc., obtained two commercial loans from Banco Popular in the amounts of $149,200 and $25,000. These loans were secured by personal guaranties from Mr. Candela, and he also executed a December 18, 2007 Collateral Assignment in which

---

[2]Because Mr. Candela's niece is a minor, she is identified in the parties' submissions only by her initials, and her parents, Dino and Vickie Candela, have been appointed as her next friends to litigate her claims on her behalf.

3

he transferred certain rights and interests in the State Farm life insurance policy to Banco Popular. (*See* Banco Popular's Motion, Ex. 2.A, 12/18/2007 Collateral Assignment.) While this assignment did not affect Mr. Candela's right to designate and change policy beneficiaries, the Collateral Assignment granted to Banco Popular the "sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity." (*Id.* at ¶ B(1).)

Mr. Candela filed for Chapter 7 bankruptcy protection on August 13, 2009. On November 24, 2009, the Bankruptcy Court issued an order of general discharge. The Bankruptcy Court then issued a November 25, 2009 notice to all creditors, including Banco Popular, informing them that they needed to file a proof of claim on or before February 17, 2010. Banco Popular filed a claim in the amount of $137,510.24, but did not indicate that this was a secured claim. The bankruptcy trustee allowed the claim and paid Banco Popular $1,815.44 from the bankruptcy estate, and Banco Popular accepted this payment. A final decree closing Mr. Candela's bankruptcy case was filed on August 18, 2010.

Mr. Candela passed away on February 12, 2011, and both P.M.C. and Banco Popular have claimed an entitlement to the proceeds of Mr. Candela's life insurance policy. P.M.C. argues that she is the primary beneficiary named in the policy itself, and that any right Banco Popular had to the policy proceeds was extinguished upon this lender's receipt of payment as an unsecured creditor during Mr. Candela's bankruptcy proceedings. Banco Popular, in turn, contends that the policy assignment granted to it by

4

Mr. Candela survived the discharge of his debts in bankruptcy, and therefore establishes this lender's continued entitlement to the proceeds of the policy under the express terms of the assignment executed by Mr. Candela.

In light of these competing claims to the $150,000 in benefits payable under Mr. Candela's life insurance policy, Plaintiff State Farm commenced this interpleader action on June 28, 2011, asking the Court to determine which of these claims should prevail. Defendant Information Systems Audit and Control Association has been voluntarily dismissed as a party, leaving Defendants P.M.C., Banco Popular, and the United States Small Business Administration as the remaining parties claiming an interest in the policy proceeds.

### III. ANALYSIS

#### A. The Standards Governing Banco Popular's Motion

Through the present motion, Defendant Banco Popular seeks an award of summary judgment in its favor as to its entitlement to the proceeds of Mr. Candela's life insurance policy. Under the pertinent Federal Rule, summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,*

477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment," *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted), and the nonmoving party must "do more than show that there is some metaphysical doubt as to the material facts" in order to withstand a properly supported summary judgment motion, *Petroleum Enhancer, LLC v. Woodward,* 690 F.3d 757, 772 (6th Cir. 2012) (internal quotation marks and citation omitted).

**B.    No Evidence in the Record Refutes Banco Popular's Right as Assignee to the Proceeds of Mr. Candela's Life Insurance Policy.**

In support of its present motion, Banco Popular asserts that it is entitled to the proceeds of Mr. Candela's life insurance policy as a result of his assignment of the policy

6

to Banco Popular as security for loans to his business. In Banco Popular's view, this assignment has remained in effect despite Mr. Candela's bankruptcy filing, because nothing that transpired in the bankruptcy proceedings operated to extinguish the rights conferred upon Banco Popular through Mr. Candela's assignment of the policy. P.M.C. counters that the policy designates her as the primary beneficiary, and that any claim Banco Popular had to the policy proceeds was surrendered by virtue of this lender's participation in Mr. Candela's bankruptcy proceedings as an unsecured creditor. As discussed below, the Court finds that Banco Popular has the better of the argument on this issue.

The Eighth Circuit Court of Appeals has observed that "[a]ssignments of insurance policies as collateral securing the policyholder's debts to the assignee are not uncommon." *Luxton v. United States,* 340 F.3d 659, 662 (8th Cir. 2003). "Unlike an absolute assignment, which permanently transfers all rights in the policy to the assignee, a collateral assignment transfers only those rights necessary to secure the assignor's debt and extinguishes the named beneficiary's interest only to the extent of the assignor's debt to the assignee." *Luxton,* 340 F.3d at 662. As pertinent here, the collateral assignment executed by Mr. Candela in this case granted to the assignee, Banco Popular, the "sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity." (Banco Popular's Motion, Ex. 2.A, 12/18/2007 Collateral Assignment at ¶ B(1).) The key point of dispute between the parties is whether this assignment survived the discharge of Mr. Candela's debts to Banco Popular as a result of his

7

bankruptcy filing.[3]

In arguing that it did not, P.M.C. relies principally on a decision of the Michigan Court of Appeals, *Emmons v. Lake States Insurance Company*, 193 Mich. App. 460, 484 N.W.2d 712 (1992). In *Emmons*, 484 N.W.2d at 713, the plaintiff's home was partially destroyed in a fire, and the plaintiff thereafter ceased making payments on a mortgage loan made by the defendant lender. The lender foreclosed on the plaintiff's home and purchased the property at a foreclosure sale, paying the full amount of the principal and interest due on the mortgage. The lender then invoked an assignment clause in the mortgage in an effort to recover the proceeds of an insurance policy covering the property, and the trial court held that the lender was entitled to these insurance proceeds.

On appeal, the plaintiff argued that the defendant bank surrendered its claim to the insurance proceeds once it foreclosed on the mortgage, and the Michigan Court of Appeals agreed:

---

[3]Although the arguments advanced in P.M.C.'s response to Banco Popular's motion focus largely on the effect of Mr. Candela's bankruptcy on his collateral assignment to Banco Popular, P.M.C. has raised one threshold challenge to the effectiveness and scope of this underlying assignment. In particular, while the collateral assignment form executed by Mr. Candela had a designated space for recording the Banco Popular loan numbers for which Mr. Candela's life insurance policy was to serve as collateral, this space was left blank. (*See* Collateral Assignment at ¶ A.) It follows, in P.M.C.'s view, that the collateral assignment should be limited in scope due to its failure to specify which (if either) of Banco Popular's two loans to Mr. Candela's business was secured through this assignment. This contention, however, runs afoul of language elsewhere in the collateral assignment stating that "[t]his assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned . . . to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between . . . the undersigned and the Assignee." (*Id.* at ¶ D.) This provision makes clear that the security interest granted to Banco Popular under the collateral assignment encompassed both of this lender's loans to Mr. Candela's business.

> The assignment [of the insurance proceeds] was collateral security for the mortgage debt. An assignment made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liability secured. This is true even though the assignment is absolute on its face. After the debt secured has been paid, the right to hold the assigned collateral ceases, and the assignee has no interest in the collateral.
>
> We find that, although the assignment survived foreclosure, the debt did not. The assignment, therefore, secured nothing. Since the purchase price at the foreclosure sale was equal to the full amount of the debt, there was no deficiency. If there is no deficiency, there can be no valid claim against any additional collateral. The insurance was an alternative source of payment. Once the debt was paid by other means, any right to the insurance proceeds was extinguished.

*Emmons,* 484 N.W.2d at 714 (citations omitted); *see also Balcer v. Peters,* 37 Mich. App. 492, 195 N.W.2d 83, 85 (1972) (citing the "established law that a creditor named as beneficiary in an insurance policy on the life of his debtor is entitled only to reimbursement to the extent of his security interest in the policy," and holding that the defendant creditors' security interest in a life insurance policy issued to the plaintiff's decedent therefore "terminated when the final payment on the loan was made"). Likewise, in this case, P.M.C. argues that the collateral assignment of Mr. Candela's life insurance policy "secured nothing," because Banco Popular's right to the proceeds of this policy was extinguished once Mr. Candela's debts to this lender were discharged in Mr. Candela's bankruptcy proceedings.

As Banco Popular observes, however, *Emmons* is distinguishable in one important respect. In that case, the debt was fully paid as a result of the defendant bank's purchase of the property at a foreclosure sale, leaving "no deficiency" that could support the bank's

9

continued interest in the insurance policy designated as collateral for the debt. *Emmons*, 484 N.W.2d at 714. Here, in contrast, while Banco Popular filed a claim in the amount of $137,510.24 in Mr. Candela's bankruptcy proceedings, it was paid only $1,815.44 from the bankruptcy estate. Accordingly, the condition that led the court in *Emmons* to conclude that the defendant bank no longer had a security interest in the collateral — namely, full payment of the debt owed to the bank — is not satisfied in this case.

Indeed, another court in this District recently distinguished *Emmons* on precisely this ground:

> [T]he key holding in *Emmons* is that the assignment in the mortgage of the insurance proceeds amounted to collateral security for the mortgage debt, and that assignment transcended the foreclosure sale. The point of distinction with the present case is that here, a portion of the debt — one that exceeds the amount of available insurance proceeds — remains after the foreclosure sale. The concern animating the holding in *Emmons* that the bank was not entitled to assigned insurance proceeds appears to be that allowing both assignment of insurance proceeds and a full-debt bid at the foreclosure sale would bestow on a mortgagee a double recovery. However, that concern is absent here: it is undisputed that [the defendant lender] purchased the property at the foreclosure sale for $86,146.61 less than the total debt remaining on the property, and the insurance proceeds that remain total $65,811.82.

*Certain Underwriters of Lloyds, London v. U.S. Industrial Services, LLC*, 825 F. Supp.2d 882, 890 (E.D. Mich. 2011). Likewise, in this case, Banco Popular received $1,851.44 from Mr. Candela's bankruptcy estate, well below the $137,510.24 debt it claimed during the bankruptcy proceedings, and still further below the total outstanding balance of the

two loans.[4] A large portion of this debt clearly remains outstanding, in an amount that exceeds the $150,000 in proceeds of the life insurance policy that Mr. Candela gave as security for this debt. Consequently, because Banco Popular would not obtain a "double recovery" if granted these life insurance proceeds, the reasoning in *Emmons* does not compel the conclusion that Banco Popular's interest in these proceeds has been extinguished.

P.M.C. next contends that Banco Popular's participation in Mr. Candela's bankruptcy proceeding, together with its failure to identify the debt owed to it by Mr. Candela as a secured claim, operated to extinguish Mr. Candela's debt as well as Banco Popular's interest in the life insurance policy given as collateral for this debt. As Banco Popular points out, however, this argument conflates the ***discharge*** of a debt in bankruptcy with the ***extinguishment*** of this debt (and the corresponding interest in the collateral securing this debt). The law cited by Banco Popular — as well as the authority identified in the Court's own research — demonstrates that the two are not the same.

As P.M.C. acknowledges, her uncle's assignment of his life insurance policy to Banco Popular gave rise to a lien against Mr. Candela. *See* 11 U.S.C. § 101(37) (Bankruptcy Code provision defining a lien as a "charge against or interest in property to

---

[4]The $137,510.24 figure claimed in the bankruptcy proceedings evidently was the outstanding balance of the $149,200 loan made to Mr. Candela's business. It appears from the bankruptcy record that the outstanding balance of the separate $25,000 loan to this business was $24,413.77, leaving a total combined loan balance of $161,924.01. In an affidavit in support of its present summary judgment motion, Banco Popular states that the current balance of the two loans to Mr. Candela's business is $188,772.60, which presumably includes principal, interest, and fees.

secure payment of a debt or performance of an obligation"). Liens can attach to unmatured property, such as life insurance policies. *See Estate of Lellock v. Prudential Insurance Co.,* 811 F.2d 186, 189 (3d Cir. 1987). Moreover, the Supreme Court has emphasized that a discharge in bankruptcy does not altogether extinguish a creditor's claim against a debtor, but rather "extinguishes only one mode of enforcing a claim — namely, an action against the debtor *in personam* — while leaving intact another — namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154 (1991).

Thus, as the courts have recognized, although an underlying debt may be discharged in bankruptcy, this "discharge does not affect a creditor's right to enforce liens against property of the estate." *Stevenhagen v. Helms,* No. 89-3636, 1990 WL 47474, at *1 (6th Cir. Apr. 18, 1990); *see also Estate of Lellock,* 811 F.2d at 189 (recognizing that "valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt" (footnote omitted)); *In re Johnson,* 439 B.R. 416, 428 (Bankr. E.D. Mich. 2010) (explaining that "a Chapter 7 bankruptcy discharge does not, in and of itself, discharge a creditor's lien"); *United Presidential Life Insurance Co. v. Barker,* 31 B.R. 145, 147 (N.D. Tex. 1983) ("[T]he courts have properly prevented bankruptcy discharge from extinguishing valid liens on property even where the entire personal liability of the debtor has been discharged."). In *Estate of Lellock,* 811 F.2d at 187, for example, Roger Lellock applied for a loan, and as security for this loan he assigned to the lender the proceeds of a life insurance policy under which his wife had been named as beneficiary.

Mr. and Mrs. Lellock then filed a Chapter 7 petition for bankruptcy relief, and were granted a discharge of their debts. After Mr. Lellock passed away, his wife claimed the proceeds of his insurance policy, contending that "the assignment of the insurance policy to the [lender] was extinguished when the underlying debt was extinguished at the bankruptcy discharge." *Estate of Lellock,* 811 F.2d at 188. The Third Circuit disagreed, explaining that this argument "ignores the line of bankruptcy cases which hold that although an underlying debt is discharged in bankruptcy, the lien created before bankruptcy against property to secure that debt survives." 811 F.2d at 188 (collecting cases, Bankruptcy Code provisions, and legislative history in support of this ruling); *see also Barker,* 31 B.R. at 147-48 (holding that a lender's interest in a life insurance policy assigned to it as security for a loan survived the debtor's discharge in bankruptcy).

In an effort to avoid this result, P.M.C. suggests that the case law cited by Banco Popular is distinguishable in various respects. Most notably, P.M.C. points out that the lenders in certain of these cases did not participate in the bankruptcy proceedings or file claims as unsecured creditors, as Banco Popular did here. Yet, as Banco Popular observes, the collateral that secured its loan to Mr. Candela — his life insurance policy — had no value at the time of Mr. Candela's bankruptcy filing and discharge, as he was alive throughout the bankruptcy proceedings. Indeed, Mr. Candela's Chapter 7 filing discloses the value of this life insurance policy as $0. (*See* P.M.C.'s Response, Ex. 4, Bankruptcy Petition, Schedule B.) The courts have recognized that where the collateral securing a debt is worthless or insufficient to cover the amount of the debt, a creditor may participate

13

in a bankruptcy proceeding as an unsecured creditor. *See Pyramid Investments Co. v. Palmquist*, 553 F.2d 1194, 1196 (9th Cir. 1977). Accordingly, because Mr. Candela's life insurance policy had no value at the time of the bankruptcy proceedings, it was appropriate for Banco Popular to participate in Mr. Candela's bankruptcy proceedings and receive payment as an unsecured creditor. Certainly, P.M.C. has not cited any case law or other authority holding that this participation as an unsecured creditor, without more, operated to extinguish Banco Popular's interest in a life insurance policy assigned to it as collateral for a debt that, while discharged, remained largely unpaid at the conclusion of Mr. Candela's bankruptcy proceedings.

P.M.C. next contends that at least some of the above-cited case law is distinguishable because Mr. Candela kept paying the premiums on his life insurance policy after his discharge in bankruptcy, while in other cases, *see, e.g., Barker,* 31 B.R. at 147, the lender (and not the debtor) paid these premiums. In *Estate of Lellock,* 811 F.2d at 188-89 n.2, however, the Third Circuit addressed precisely this purported distinction and found that it had "no relevancy." Although the court opined that the debtor's estate "might arguably be entitled to reimbursement for the premiums" paid by the debtor prior to his death, it reasoned that the estate was not entitled to the insurance "proceeds that [the debtor] assigned away." 811 F.2d at 189 n.2. Likewise, in this case, even assuming that Mr. Candela had no obligation to pay the premiums on his life insurance policy following his discharge in bankruptcy, and that he did so only under the mistaken belief that his niece would receive the policy proceeds upon his death, P.M.C. fails to explain

14

how these voluntary payments should operate to extinguish Banco Popular's interest in the policy proceeds as assigned to it by Mr. Candela. After all, if Mr. Candela had ceased to make these payments, Banco Popular presumably would have been notified as an assignee of the policy proceeds, and could then have elected to assume the obligation to pay the policy premiums. Because Mr. Candela continued to make the payments, Banco Popular never was called upon to do so, but it cannot be said that this lender "breached" any payment obligation or "failed" to take any steps to ensure that the premiums were paid, such that its lien on the policy proceeds would thereby have been extinguished.

     Finally, P.M.C. makes a generalized appeal to equitable principles as support for her claim to the proceeds of Mr. Candela's life insurance policy. First, she suggests that it would be unfair to award the proceeds to Banco Popular, where this creditor participated in the bankruptcy proceedings but she did not. Again, however, the record fails to disclose any breach, wrongdoing, or inequitable conduct by Banco Popular in the course of the bankruptcy proceedings; this lender merely filed a claim as an unsecured creditor and recovered only a small portion of the debt owed to it by Mr. Candela. Similarly, to the extent that P.M.C. contends that it was unfair to assign the proceeds of Mr. Candela's insurance policy to Banco Popular without seeking her consent or signature on the collateral assignment as a policy beneficiary, she points to nothing in the language of the policy (or the law) that would require her assent to this arrangement, and Banco Popular cannot be faulted for failing to insist that Mr. Candela secure the (unnecessary) agreement of any beneficiaries before making this assignment.

P.M.C further contends that Banco Popular's claim is barred by laches. Under Michigan law, "[t]he doctrine of laches is an equitable remedy that is applicable when an unexcused delay in bringing an action and change in material condition results in prejudice to [a] party." *Steinberg v. Federal Home Loan Mortgage Corp.*, 901 F. Supp.2d 945, 952 (E.D. Mich. 2012). In P.M.C.'s view, a material change in circumstances occurred when Banco Popular "failed to properly assert its claim as a secured creditor" in Mr. Candela's bankruptcy proceedings and instead "was paid as an unsecured creditor." (P.M.C.'s Response Br. at 14.)

As discussed earlier, however, participation in bankruptcy proceedings as an unsecured creditor despite having a secured claim is appropriate when the value of that security cannot compensate for the outstanding debt. Because Mr. Candela's life insurance policy had no value at the time of the bankruptcy proceedings, Banco Popular could properly elect to participate in the proceedings as an unsecured creditor. The Court does not view this participation as a delay in Banco Popular's assertion of its rights as a secured creditor, where its security interest had no value at the time of the proceedings. Moreover, this participation did not extinguish or otherwise affect the collateral assignment of the policy to Banco Popular, so there is no change in conditions that could have caused prejudice to P.M.C. Upon Mr. Candela's death, Banco Popular provided timely notice of its interest in the policy to the insurer, Plaintiff State Farm. Because Banco Popular cannot be accused of unexcused delay at any point in this process, the doctrine of laches does not apply in this case.

In summary, while Banco Popular's participation in Mr. Candela's bankruptcy proceedings may have operated to discharge Mr. Candela's underlying debt to this lender, it had no effect on the lien arising from Mr. Candela's pre-bankruptcy collateral assignment of his life insurance policy to Banco Popular. That assignment stands because the amount Banco Popular received in the bankruptcy proceedings repaid only a small fraction of the debt owed by Mr. Candela to this creditor. In accordance with this assignment, Banco Popular is entitled to the proceeds of the life insurance policy, and the evidence and arguments put forward by P.M.C. do not give rise to a genuine issue of fact as to the validity and effect of this assignment. Consequently, the Court holds as a matter of law that Banco Popular is entitled to the proceeds of Mr. Candela's life insurance policy.

## IV. **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Banco Popular North America's June 25, 2012 motion for summary judgment (docket #37) is GRANTED. In light of this ruling, Defendant Banco Popular is entitled to the insurance proceeds paid into the Court by Plaintiff State Farm Life Insurance Company pursuant to a July 19, 2012 stipulated order, subject to any competing interest in these proceeds that might be claimed by Defendant United States Small Business Administration.

In accordance with the Court's ruling, IT IS HEREBY ORDERED that within *fourteen (14) days* of the date of this opinion and order, Defendant Banco Popular shall

file with the Court and serve on all parties a proposed judgment reflecting the Court's

ruling.  Any party wishing to object to the entry of this proposed judgment must file and

serve any desired objections within *seven (7) days* after Banco Popular's service of its proposed judgment. The Court will then address any objections and enter an appropriate judgment governing the disposition of the life insurance proceeds.

    SO ORDERED.


                    s/Gerald E. Rosen
                    Chief Judge, United States District Court

Dated: August 5, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 5, 2013, by electronic and/or ordinary mail.

                    s/Julie Owens
                    Case Manager, (313) 234-5135